IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

PAMELA SUE WEBB,

                Plaintiff,

       Vs.                                     No. 13-4055-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Pamela Sue Webb's ("Webb") Title II application for disability insurance benefits and her Title XVI application for supplemental security income ("SSI") under the Social Security Act ("Act"). Webb alleged a disability onset set date of May 15, 2003, based on a combination of impairments. The administrative law judge ("ALJ") filed her decision on March 19, 2012, finding that Webb was not under a disability from the alleged onset date through the date of her decision. (Tr. 12-23). With the Appeals Council's denial of Webb's request for review, the ALJ's decision stands as the Commissioner's final decision. The administrative record (Dk. 8) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 9, 14 and 15), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g),

which provides that the Commissioner's finding "as to any fact, if supported by

substantial evidence, shall be conclusive." The court also reviews "whether the

correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168,

1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Persales*,

402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more

than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence

"must be based upon the record taken as a whole" while keeping in mind

"evidence is not substantial if it is overwhelmed by other evidence in the

record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal

quotation marks and citations omitted). In its review of "whether the ALJ

followed the specific rules of law that must be followed in weighing particular

types of evidence in disability cases, . . . [the court] will not reweigh the

evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489

F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists:

"is not merely a quantitative exercise. Evidence is not substantial 'if it is

overwhelmed by other evidence--particularly certain types of evidence (e.g.,

that offered by treating physicians)--or if it really constitutes not evidence but

mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful

activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found that Webb had not engaged in substantial gainful activity since the alleged onset date of his disability. At step

two, the ALJ found the following severe impairments:   "affective mood

disorder, degenerative disc disease of the lumbar spine, coronary artery

disease, hypertension, and substance abuse." (Tr. 14). The ALJ excluded the

plaintiff's impairment of the right wrist as non-severe. At step three, the ALJ

did not find that the impairments, individually or together, equaled the

severity of the Listing of Impairments. Before moving to steps four and five,

the ALJ determined that Webb had the residual functional capacity ("RFC") to

perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> involving lifting and carrying up to 10 pounds occasionally, standing and
> walking for two hours in an eight-hour day, and sitting for six hours in an
> eight-hour day. She can occasionally perform all postural positions,
> except she can never climb ladders, ropes or scaffolds. She can
> understand and remember simple instructions to complete simple
> work-related tasks. She would work better with things, rather than
> people. She should have no contact with the public.

(Tr. 17). At step four, the ALJ found that the claimant had no past relevant

work. (Tr. 22). At step five, the vocational expert provided testimony from

which the ALJ concluded that, "[c]onsidering the claimant's age, education,

work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that the claimant can perform."

*Id.*

## ISSUE ONE:   PROPER EVALUATION OF MEDICAL OPINION EVIDENCE ON MENTAL IMPAIRMENTS

In 2009, the plaintiff began seeing her current treating physician,

5

Dr. Regina Carolina at the Wyandot Mental Health Center for the initial diagnostic impressions of post-traumatic stress disorder, mood disorder and continuous symptoms of mood lability, anxiety and depression with a note to rule out bipolar disorder II. Dr. Carolina completed a medical source statement in April of 2011 noting that Webb had marked limitations in interacting with the public, supervisors and co-workers and in responding appropriately to pressures or changes in the typical work setting. (Tr. 757). In support of this, Dr. Carolina wrote:  "Easily overwhelmed, tearful. Decompensates w/ (more) stressors. Poor coping skills." *Id.* In February of 2012, Dr. Carolina completed a second medical source statement with similar assessments but added marked limitations for understanding and carrying out detailed instructions and an extreme limitation for responding appropriately to work pressures in usual work setting. (Tr. 1062-63).

The plaintiff challenges that in her evaluation of Dr. Carolina's opinions, the ALJ "essentially disregarded all of the directives for evaluating the opinions of treating physicians" and failed to provide an "explanation supported by evidence in the record" for concluding that Dr. Carolina's opinions were not supported by medically acceptable techniques or were inconsistent with other evidence of record. (Dk. 9, p. 19). The plaintiff further points out that the ALJ did not state what lesser weight was given Dr. Carolina's opinions and did not provide an explanation supported by the record

6

for accepting parts of the opinions and rejecting others. The plaintiff complains that the ALJ's evaluation of Dr. Carolina's opinions is conclusory, is based on the ALJ's own speculative conclusions or lay judgment, and is not supported by substantial evidence. Finally, the plaintiff labels the ALJ's reasons for giving greater weight to the opinions of two non-examining consulting physicians as conclusory and unsupported by the evidence.

The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). A "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). A treating physician's opinion, however, is not entitled to controlling weight "if it is not well-supported by medically acceptable clinical and laboratory techniques or if it is inconsistent with the other substantial evidence in the case record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). A decision or finding that does not give the treating physician's opinion controlling weight, as here, does not mean that the physician's opinion was "rejected." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). Instead, a treating physician's opinion is "still entitled to deference and subject to weighing under the relevant factors." *Mays v. Colvin*, 739 F.3d 569,

574 (10th Cir. 2014) (citing 20 C.F.R. § 404.1527). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). An ALJ is not required to discuss each of these factors, but the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Asture*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks and citations omitted). Nothing more is required than for the ALJ to provide "good reasons in his decision for the weight he gave to the treating sources' opinions." *Id*. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Watkins*, 350 F.3d at 1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)).

Because the ALJ's decision fairly shows that controlling weight was not given to Dr. Carolina's decision, reversal is not required for the ALJ's failure to state this finding. *See Mays*, 739 F.3d at 575. Nor is it reversible error for the ALJ to have failed to write that Dr. Carolina's opinions were not well-supported

by medically acceptable clinical and laboratory techniques or were inconsistent with the other substantial evidence. See *Anderson v. Colvin*, 514 Fed. Appx. 756, 762, 2013 WL 1339379, at *5 (10th Cir. Apr. 4, 2013). "While it would have been helpful if the ALJ had specifically stated that she rejected or accorded no weight to . . . [Dr. Carolina's] opinion, that omission is not error requiring remand, because in context the decision makes clear that she provided no weight to the opinion." *Stalford v. Colvin*, 2013 WL 872336 at *7 (D. Kan. Mar. 8, 2013). The significant question remaining is whether the ALJ has given specific, legitimate reasons for rejecting Dr. Carolina's opinion.

The ALJ's first stated reason is that the opinions are found "to be based on the claimant's subjective complaints more so than any objective finding." (Tr. 21). The ALJ does not explain this finding nor suggest what other objective findings would be needed to sustain the opinions. Subjective reports are not "medically acceptable clinical and laboratory diagnostic techniques" and may justify according less than controlling weight to a treating physician's opinion. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). The medical evidence of record shows, however, that Dr. Carolina completed mental status exams almost monthly during this period with reported findings that frequently included references to Ms. Webb being depressed, talking fast, tearful, focused on stressors, anxious, restless, pressured, and restricted. The treatment notes include adjusting and changing medications to address either

9

continuing or increasing problems with anxiety and depression. The Tenth

Circuit in *Langley* held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based
> upon his own speculative conclusion that the report was based only on
> claimant's subjective complaints and was "an act of courtesy to a
> patient." *Id.* The ALJ had no legal nor evidentiary basis for either of these
> findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on
> claimant's subjective complaints or that his report was merely an act of
> courtesy. "In choosing to reject the treating physician's assessment, an
> ALJ may not make speculative inferences from medical reports and may
> reject a treating physician's opinion outright only on the basis of
> contradictory medical evidence and *not due to his or her own credibility
> judgments, speculation or lay opinion." McGoffin v. Barnhart,* 288 F.3d
> 1248, 1252 (10th Cir. 2002) (quotation omitted; emphasis in original).

373 F.3d at 1121. The ALJ's decision does not cite to either a legal or

evidentiary basis for this assertion and does not offer any contradictory

medical evidence to sustain her conclusion.

Furthermore, "[t]he practice of psychology is necessarily

dependent, at least in part, on a patient's subjective statements." *Thomas v.

Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005). "'[A] psychological

opinion may rest either on observed signs and symptoms or on psychological

tests.'" *Langley*, 373 F.3d at 1122 (quoting *Robinson v. Barnhart*, 366 F.3d

1078, 1083 (10th Cir. 2004)). Thus, the ALJ cannot reject a physician's

"opinion solely for the reason that it was based on . . . [claimant's] responses

because such rejection impermissibly substitutes her judgment for that of the

. . . [physician]." *Thomas*, 147 Fed. Appx. at 760.

The ALJ's next stated reason is the conclusory statement, "[a]

10

review of the treatment notes do not clearly delineate any disease process that would result in the limitations assigned." (Tr. 21). Without citing any medical evidence to the contrary, the ALJ again "impermissibly put[s herself] . . . in the position of judging a medical professional on the assessment of medical data." *Thomas*, 147 Fed. Appx. 759-760. To support this finding, the ALJ gives as an "example" the following:    "the author of this statement notes the onset of her severe mental limitations began 10 to 15 years before the date of the medical source statement; yet, the claimant worked for a year, without issue, as noted by employer at Exhibit 5E, and the position ended for reasons unrelated to any medical impairment." (Tr. 21-22).

First, while Dr. Carolina's written opinion (Tr. 765) does describe the onset of Ms. Webb's bipolar disorder as being 10 to 15 years, it does not state affirmatively that Ms. Webb was incapable of being gainfully employed throughout this same period. While the ALJ's interpretation certainly creates a straw man, the cited evidence still does not effectively knock it down. Reviewing the evidence of record, the court cannot say it sustains the conclusion that the claimant worked for an entire year for a single employer without any problems and left only because of transportation problems. Exhibit 5E, a work activities questionnaire completed by an assistant manager at IHOP, reflects that Ms. Webb was employed from October of 2007 through November 2008 as a server, waitress and hostess and was terminated for

transportation issues. (Tr. 229-230). There also was an affirmative response to the question whether Ms. Webb "ever worked a full time schedule for you?" (Tr. 231). On two function reports and on admission to a mental hospital, the plaintiff stated that she was fired by the IHOP manager. Even more significant, is that the wage and payment history for Ms. Webb, as detailed in the record, shows that her total wages and tips paid by IHOP during this supposed year of employment was less than $1,000. The same records confirm that for each year, 2007 and 2008, she also worked for four or five other employers and her total income from that employment exceeded what she earned at IHOP. The plaintiff's earning records not only overwhelm the inferences that the ALJ seeks to draw from Exhibit 5F, but the earning records are certainly more consistent with the plaintiff's explanation of her employment history as a whole.

The ALJ next finds:

> While the claimant's substance abuse was found to be immaterial, it is obvious she continues to struggle with sobriety. This fact coupled with her troubling familial issues, i.e., her son being incarcerated, and her dissatisfaction with her current living arrangements are aggravating factors with her emotional stability, but do not cause the restrictive limitations outlined in the medical source statement, nor do any symptoms from her affective mood disorder.

(Tr. 22). "An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors." *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (citation omitted). As the claimant points out, the ALJ's

decision cites no support for this medical judgment on the causal relationship between her limitations and the symptoms of her affective mood disorder. "The opinion of [a consultative] examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). If the ALJ intends to reject the opinion of Dr. Carolina in favor of the non-examining physicians, she must provide a legally sufficient explanation for doing so, which she has not done here. For all of the above reasons, the court concludes that the ALJ did not follow the correct legal standards in considering Dr. Carolina's opinion, and absent clarification from the ALJ on remand, the ALJ's stated grounds for rejecting this opinion to do not appear to be supported by substantial evidence.

**ISSUE TWO:   PROPER ASSESSMENT OF MENTAL RFC**

The plaintiff challenges the ALJ's assessment of her mental RFC as so lacking in discussion that the court cannot determine whether it is supported by the evidence of record. Because the ALJ's consideration of Dr. Carolina's opinion on remand may necessarily affect the mental RFC findings, the court will address this issue only briefly. The ALJ's RFC finding that, Webb "would work better with things rather than people," is not vague and insufficient guidance for the vocational expert (VE). As the Commissioner

13

points out, unskilled work relevant to mental impairments "'ordinarily

involve[s] dealing primarily with objects, rather than with data or people.'"

*Zaricor-Ritchie v. Astrue*, 452 Fed. Appx. 817, 825, 2011 WL 6243216 at *7

(10th Cir. Dec. 15, 2011) (quoting SSR 85-15, 1985 WL 56857 at *4 (1985)).

The ALJ's statement on "working better with things" is accompanied by, "[s]he

should have no contact with the public." (Tr. 17). There is nothing of record to

indicate the VE was confused by or did not understand this RFC finding.

Turning to what the plaintiff describes to be a conflict between the state

agency consultants over plaintiff's limitation on working with co-workers, the

ALJ resolved this conflict in Webb's favor. The plaintiff does not explain how

she would benefit from requiring the ALJ to explain this resolution now. *See*

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 n. 2 (10th Cir. 2012).

            Finding that the plaintiff had "moderate difficulties" with regard to

concentration, persistence or pace, the ALJ stated that she "adjusted the

residual functional capacity assessment below in the area of complexity of

tasks." (Tr. 16). The ALJ gave "great weight" to non-examining consulting

psychologist, Sallye M. Wilkinson, Ph. D. of Disability Determination Services,

who opined in June of 2010 that Ms. Webb's mental RFC was moderately

limited in "[t]he ability to maintain attention and concentration for extended

periods." (Tr. 539). The plaintiff complains that the ALJ did not adequately

incorporate this limitation by the RFC finding that the plaintiff "can understand

and remember simple instructions to complete simple work-related tasks."
(Tr. 17). Without these moderate difficulties in concentration, persistence or
pace adequately included in the hypothetical questions, the plaintiff concludes
the VE's testimony is not substantial evidence.

The plaintiff cites *Wiederholt v. Barnhart*, 121 Fed. Appx. 833,
839, 2005 WL 290082 at *5 (10th Cir. 2005), where the court rejected the
terms, "simple" and "unskilled," as adequate to incorporate the more specific
mental impairments, including moderate difficulties in maintaining
concentration, persistence, or pace. "Testimony elicited by hypothetical
questions that do not relate with precision all of a claimant's impairments
cannot constitute substantial evidence to support the [Commissioner's]
decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation
omitted). Moderate impairments may also decrease a claimant's "ability to
perform" simple work. *Bowers v. Astrue*, 271 Fed. Appx. 731, 733 (10th Cir.
2008) (citing S.S.R. 96-9p, 1996 WL 374185, at *9 "(indicating that even '[a]
less than substantial loss of ability to perform' a basic work activity in
unskilled, sedentary labor may erode the occupational base)."

The ALJ's RFC findings fail to discuss the moderate limitation in
mental RFC for maintaining attention and concentration for extended periods.
The ALJ provides no explanation for how the RFC findings of simple instructions
and simple job-related tasks necessarily incorporate this limitation. The case

15

law recognizes that such a limitation may decrease the claimant's ability to do simple work. *See Price v. Colvin*, 2014 WL 1246762 at *5 (D. Kan. Mar. 26, 2014). On remand, the ALJ should either include all of the limitations in the assessment, or, in the alternative, provide a legally sufficient explanation for not including these limitations in the claimant's RFC findings.

IT IS THEREFORE ORDERED that the decision of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 6th day of August, 2014, Topeka, Kansas.


s/Sam A Crow
Sam A. Crow, U.S. District Senior Judge

16